UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NCR CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>CHRIS GOH,<br><br>                Defendant. | CASE NO. C16-127 BJR<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter is before the Court on cross-motions for summary judgment, the second in a series of phased dispositive motions intended to resolve the central issue of this case; namely, does Defendant Goh's arbitration agreement with Plaintiff NCR (his former employer) permit him to assert the claims of a class of potential parties in an arbitration proceeding with Plaintiff NCR?

The first phase of this litigation saw the parties disputing whether the arbitrator had the authority to decide the arbitrability construction issue. The Court granted Defendant Goh's motion for summary judgment in that regard, ruling that the arbitrator did have that authority. (Dkt. No.

55.) The arbitrator subsequently reviewed the arbitration agreement and construed it as permitting an employee to maintain a class action through arbitration. (*See* Dkt. No. 43-4; "Construction Award.") Plaintiff NCR seeks to have this Court conduct an independent *de novo* review of the class arbitrability issue; alternatively, the company seeks to have the Court vacate the arbitrator's ruling. Having reviewed the parties' arguments, the relevant case law and relevant portions of the court record, the Court will deny Plaintiff NCR's motion for either *de novo* review or vacatur of the arbitrator's ruling. Defendant Goh's motion for summary judgment will be granted and the arbitrator's decision is confirmed; the Court's reasoning follows.

## II. BACKGROUND

In August of 2013, Plaintiff NCR Corporation ("NCR") hired Defendant Chris Goh ("Goh") as a customer engineer in Seattle, Washington. (Dkt. No. 43-1 at 7.) As a condition of his hiring, Plaintiff NCR and Defendant Goh entered into a "Mutual Agreement to Arbitrate All Employment Related Claims." ("Agreement;" Dkt. No. 11-1.) The Agreement, which was drafted by Plaintiff NCR, contained the following provisions:

> This agreement to arbitrate includes every possible claim (other than workers compensation claims or claims for benefits covered by the Employee Retirement Income Security Act) arising out of or relating in any way to my employment…
>
> The arbitration hearing will be conducted by the American Arbitration Association (the "AAA") under the AAA's rules (except as those rules are modified by this Agreement…)
>
> Any issue or dispute concerning the interpretation or enforceability of this Agreement shall be resolved by the arbitrator…
>
> We intend for this Agreement to be interpreted broadly to allow arbitration of as many disputes as possible.

(*Id.*)

In May 2014, Defendant Goh voluntarily terminated his employment with NCR. (Dkt. No. 29 at 14.) On June 25, 2015, he filed a demand for arbitration against NCR in Seattle, Washington, alleging that NCR had failed to provide the disclosure required under the Fair Credit Reporting Act prior to running a background check on employees and applicants. (Dkt. No. 43-2.) Besides his individual claims, Defendant Goh also sought to assert claims on behalf of all other persons on whom NCR had obtained background reports. (*Id.*) Although Plaintiff NCR initially indicated its objection to an arbitrator's authority to resolve the class arbitration issue (Dkt. No. 11-2 at 1), NCR eventually agreed to the appointment of a provisional arbitrator to resolve "only the issue of whether the agreement authorizes class arbitration." (Dkt. No. 20 at 55.)

The AAA announced the selection of Arbitrator James Paulson on December 8, 2015. (*Id.* at 66.) The parties were given a briefing schedule on the class arbitration issue, with January 29, 2016 established as the filing deadline. (Dkt. No. 11 at 2.) Two days before the deadline, NCR advised Defendant Goh and the AAA that it intended to file an action in this District requesting that the federal court determine whether the Agreement permitted class arbitration (Dkt. No. 11 at 3); on that same day, NCR filed this suit. (Dkt. No. 1.)

The following day, Plaintiff NCR made an email request to the AAA and Defendant Goh's counsel that administration of the arbitration be suspended pending this Court's resolution of the class arbitration issue. (Dkt. No. 11-6.) The AAA declined to do so on the grounds that its Employment Arbitration Rules do not permit a stay when judicial intervention is sought more than thirty days after the arbitration process begins. (Dkt. No. 11-7.) NCR subsequently sought a temporary restraining order to enjoin Defendant Goh from pursuing a ruling from the arbitrator on the class arbitration issue. (Dkt. No. 9.) On February 4, 2016, NCR's motion was denied on the grounds that it had failed to demonstrate entitlement to the requested relief. (Dkt. No. 24.)

1 The clause construction process moved forward and, on March 8, 2016, the arbitrator
2 issued a "Partial Final Clause Construction Award" (Dkt. No. 43-4) in which he ruled that the
3 parties' Agreement authorizes class arbitration. Following the arbitrator's decision, the parties
4 filed cross-motions for summary judgment on whether the arbitrator was authorized to make that
5 decision. (Dkt. Nos. 42, 44.) The presiding judge at the time, The Honorable Marsha J. Pechman[1],
6 ruled that NCR had waived its objection to the arbitrator's authority and granted summary
7 judgment in favor of Defendant Goh on the issue. (Dkt. No. 55.) The matter is now before the
8 Court on the second round of cross-motions for summary judgment, intended to resolve the issue
9 of whether to confirm the arbitrator's ruling that the Agreement permits class arbitration.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 55 (1986).

The moving party is only required to assert that the party with the burden of proof cannot carry that burden, and "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. On those issues where he bears the burden of proof, Defendant Goh must present actual evidence to successfully oppose the motion and may not rest on allegations, speculations or opinion. *Anderson*, 477 U.S. at 248.

---

[1] The matter was transferred to this Court on September 6, 2016; *see* Dkt. No. 57.

1     The parties do not dispute the facts. The remaining issues presented by this controversy are strictly legal, therefore this matter is appropriate for resolution by means of summary judgment.

## IV. DISCUSSION

The cross-motions for summary judgment in this second phase of dispositive briefing present two main arguments: (1) whether, under the standard of review set by the Federal Arbitration Act ("FAA;" *see* 9 U.S.C. § 10(a)) and the cases examining decisions under that statutory scheme, the arbitrator's ruling that the parties' Agreement contemplated class arbitration should be confirmed or vacated; and (2) whether Plaintiff NCR is entitled to independent *de novo* review of the class arbitrability issue. The Court will address the issue of *de novo* review first.

### A. Plaintiff NCR is not entitled to *de novo* review of the class arbitrability issue.

NCR contends that it is entitled to *de novo* review of the question of whether its Agreement with Plaintiff NCR permits a class arbitration. NCR's position is that, despite the fact that it waived its objection to the arbitrator's authority, its actions following that waiver – filing this lawsuit and then moving for a TRO – "preserved" its right to independent review by the court of the issue. (Dkt. No. 60, Opening Brief at 20.) Plaintiff NCR cites a Supreme Court opinion, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), as supportive of this argument.

But the facts in *First Options* are not on all fours with NCR's circumstances, and thus its rationale and holding are inapplicable here. The Supreme Court in *First Options* concluded that, "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration, the Court of Appeals was correct in finding that the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts." *Id.* at 947.

Plaintiff NCR in this matter *did* "clearly agree to submit the question of arbitrability to arbitration," and the fact that it later changed its mind about that decision has already been found

to be of no legal consequence. Plaintiff NCR has not presented a compelling argument as to why the decision of the previous presiding judge in this matter – "NCR repeatedly indicated its agreement to allow the arbitrator to decide the class arbitration issue, thereby withdrawing its objection" (Dkt. No. 55, Order at 7) – is not still the law of this case. It has already been established in this litigation that "NCR waived its right to object to the arbitrator's authority to decide the class arbitration issue" (*Id.*) and NCR's argument to the contrary at this point is unavailing.

NCR is not entitled to *de novo* review by the court of the class arbitrability issue.

**B. The arbitrator's decision must be confirmed under the FAA and applicable federal and state law.**

Section 9 of the FAA states that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."

There are several grounds on which an arbitration award can be vacated, but only one is at issue here. "The United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration… where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Plaintiff NCR's position is that the arbitrator's decision represents an overreaching of his powers to the extent that it must be vacated. NCR raises two rationales for this argument; the Court will examine each in turn.

*1. Did the arbitrator recognize but disregard clearly applicable precedent?*

The law in the Ninth Circuit is that an arbitrator's award may be vacated for "manifest disregard" where "'the arbitrator recognized the applicable law and then ignored it.'" *Comedy*

*Club, Inc. v. Improv West Assocs.,* 553 F.3d 1277, 1290 (9th Cir. 2003)(*en banc*)(citation omitted). NCR asserts that the arbitrator in this matter acknowledged but then disregarded two critical Supreme Court precedents.

*Stolt-Nielsen, N.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) involved an arbitration agreement which, by stipulation of the parties, was "silent" on the issue of class arbitrability (the stipulation acknowledged that not only did the agreement make no reference to class arbitration, but the parties "had not reached any agreement on the issue"). *Id.* at 673. An arbitration panel, focusing on policy concerns, concluded that class arbitration should be permitted under the agreement. *Id.* at 673-676. The District Court vacated the award on the grounds that the arbitrators' failure to conduct a choice-of-law analysis constituted a "manifest disregard" of the law. *Stolt-Nielsen, N.A. v. AnimalFeeds Int'l Corp.,* 435 F.Supp. 382, 384-385 (S.D.N.Y. 2006). The Court of Appeals reversed (548 F.3d 85 (2nd Cir. 2008)), and the Supreme Court granted certiorari. 557 U.S. 903 (2009).

On review, the Supreme Court overturned the appellate decision, holding that imposition of class arbitration on a party to an agreement is improper "unless there is a contractual basis for concluding that the party agreed to" submit to such a form of arbitration. *Id.* at 684. In construing an arbitration agreement, a court or arbitrator "must give effect to the contractual rights and expectations of the parties." *Id.* at 682. "In certain contexts," the Court held, "it is appropriate to presume" that the parties "implicitly authorize[d]" class arbitration, but this implicit authorization may not be inferred just from the "fact of the parties' agreement to arbitrate." *Id.* at 685. Nor may an arbitrator presume "that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687.

In *Oxford Health Plans, LLC v. Sutter*, 133 S.Ct. 2064 (2013), a doctor entered into a contract with a health plan company. When the doctor sued the health plan company on behalf of himself and a proposed class of physicians, alleging failure to make full and prompt payment to the doctors, Oxford moved to compel arbitration of Sutter's claims, a motion which was granted. The parties agreed that the arbitrator should decide whether their contract authorized class arbitration. The arbitrator, construing a clause in the agreement which stated that "[n]o civil action concerning any dispute arising under the Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration," concluded that it did. *Id.* at 2067.

Plaintiff twice tried to vacate the arbitrator's decision on appeal (pre- and post-*Stolt-Nielsen*); both times the District Court and the Court of Appeals affirmed the arbitrator. On the second appeal, the Third Circuit noted the constraints placed on judicial review by §10(a)(4): So long as an arbitrator "makes a good faith attempt" to interpret a contract, "even serious errors of law or fact will not subject his award to vacatur." 675 F.3d 215, 220 (3rd Cir. 2012). The Supreme Court granted certiorari. 113 S.Ct. 786 (2012).

On review, the Supreme Court also refused to vacate the arbitrator's decision. The Court quoted *Stolt-Nielsen* that "[i]t is not enough… to show that the [arbitrator] committed an error – or even a serious error" (559 U.S. at 671) and upheld the Court of Appeals' finding that, "[s]o long as an arbitrator 'makes a good faith attempt' to interpret a contract, 'even serious errors of law or fact will not subject his award to vacatur.'" 113 S.Ct. at 2068; citation omitted. While clearly not agreeing with the arbitrator's legal conclusion, the Supreme Court in *Oxford Health* stated:

> All we say is that convincing a court of an arbitrator's error – even his grave error – is not enough. So long as the arbitrator was "arguably construing" the contract – which this one was – a court may not correct his mistakes under §10(a)(4).

*Id.* at 2070.

It is unquestioned that the arbitrator in this matter cited to both these cases, summarizing their principles as "the relevant restrictions and guidance" of the Supreme Court "concerning the arbitrability of class actions." (Construction Award at 4.) It is NCR's contention that the arbitrator in his ruling "recognized the applicable law and then ignored it;" in fact, Plaintiff NCR claims that "the arbitrator announced his intent to disregard all of the authorities cited by both parties, other than the four decisions involving NCR's own arbitration clause." (Dkt. No. 60, Pltf Brief at 21.)

The Court does not agree. In the first place, the portion of the arbitrator's decision cited by Plaintiff NCR to support this contention of "intent to disregard" appears to be taken considerably out of context. The Construction Award contains a section entitled "Court Imposed Restrictions/Guidance on the Arbitrator Interpreting The Arbitration Clause Language" which references the relevant Supreme Court decisions and summarizes the holdings which apply to arbitrator's analysis. (S*ee* Construction Award at 4.) Following that section is a section entitled "Prior Cases Involving NCR's Arbitration Clause Language;" in a footnote to the *title* of that section, the arbitrator observes that

> [w]hile both parties have cited several arbitration decisions interpreting similar language to that in the instant agreement, the Arbitrator finds it most helpful to examine situations involving the actual language of the arbitration agreement.

(Construction Award at 5, n.7.) Given the location of the footnote, the Court finds that it is not a reference to the Supreme Court cases cited in the previous section and does not constitute an announcement of the arbitrator's intent to ignore *Stolt-Nielsen* and *Oxford Health*.

The Court further finds that the arbitrator's analysis satisfies both the requirements of *Stolt-Nielsen* and *Oxford Health*. In a lengthy section of the Construction Award entitled "Analysis of Relevant Arbitration Clause Language," the arbitrator lays out every paragraph in the Agreement

which he finds supportive of an interpretation permitting class arbitrability. (Construction Award at 8-9.)

In the second paragraph of the Agreement, the arbitrator notes that the document "includes every possible claim… arising out of or relating in any way to my employment," a phrase which he construes as "expansive enough to cover concerns of other employees where those concerns/claims are the same as with the employee executing the document." (*Id.* at 8.) The opinion finds the language of Paragraph Eight (that the Agreement is "to be interpreted broadly to allow arbitration of as many disputes as possible") "particularly significant as it is the only language referencing how the agreement is to be interpreted," and further finds "that this language allows for class disputes as class disputes are clearly a type of dispute of which an individual employee may be a part." (*Id.* at 9.) The arbitrator concludes that, "[w]hile this Arbitrator finds that the language is clearly susceptible of an interpretation that its intent was to permit class actions, at the very least the language must be viewed as ambiguous." (*Id.*)

The decision then goes on to an analysis of Washington contract law which "recognize[s] the well-established rule of contract interpretation that ambiguities should be interpreted against the drafter particularly where the parties had unequal bargaining power." (*Id.* at 9-10.) Finding that NCR's Agreement is "a contract of adhesion" created by Plaintiff NCR, the arbitrator then proceeds to construe the document in Defendant Goh's favor. (*Id.* at 10.)

Plaintiff NCR's extensive argument that this contractual analysis is incorrect is ultimately for naught because this Court is bound (as was the arbitrator) by the constraints of *Oxford Health* and the cases which followed it. The Supreme Court could not have been clearer: so long as the arbitrator is "arguably construing" the contract, § 10(a)(4) of the FAA does not permit the

correction of any errors through vacatur. The Court finds it beyond question that the arbitrator in this matter was construing the Agreement before him.

And that finding leads the Court to conclude that the tenets of *Stolt-Nielsen* have been observed. While *Stolt-Nielsen* does stand for the twin principles that merely agreeing to bilateral arbitration does not constitute an agreement to class arbitrability and an arbitrator cannot presume from "mere silence" that the parties have consented to class arbitration, the Supreme Court also stated that an arbitration award must stand unless "there is no contractual basis for determining that the parties agreed to class arbitration." 559 U.S. at 682. The arbitrator here clearly found "a contractual basis for determining that the parties agreed to class arbitration," a finding which (even if it were erroneous) is not subject to being vacated.

The Supreme Court in *Stolt-Nielsen* identified the error of the arbitration panel as follows: "[I]nstead of identifying and applying a rule of decision derived from the FAA or… [state] law, the arbitration panel imposed its own policy choice and thus exceeded its powers." 559 U.S. at 676-77. The arbitrator here identified and applied Washington contract law. (*See* "Relevant Rules of Interpretation of Contract Language;" Construction Award at 9-10.) Furthermore, the Court could not find – and Plaintiff NCR has not identified – any instance where it could fairly be said that the arbitrator was "imposing [his] own policy choice." NCR has not established to the Court's satisfaction that the arbitrator here exceeded his powers.

The Court is cognizant that, at one point in the Construction Award, the arbitrator cites with approval language from an earlier matter (*Haro v. NCR Corp.*, AAA 11-160-1962-05 (Mar. 6, 2006)) wherein the arbitrator observed that an agreement identical to the one construed here was "silent about class actions." (Construction Award at 6.) The Court understands that language to mean that the phrase "class action," "class arbitration," or "class arbitrability" appears nowhere in

the Agreement. But *Stolt-Nielsen* does not stand for the principle that only an arbitration agreement that explicitly states that class arbitrations are permitted will be found to support class arbitrability. The First, Second and Third Circuits agree: "*Stolt-Nielsen* did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222 (3rd Cir. 2012); *see also Fantastic Sams Franchise Corp. v. FSRO Assoc'n,* 683, F.3d 18, 22 (1st Cir. 2012) and *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123 (2nd Cir. 2011).[2]

This analysis disposes of Plaintiff NCR's final argument on federal precedent: that the arbitrator wrongfully invoked Washington contract law because any applicable state law was supplanted by the Supreme Court's opinion in *Stolt-Nielsen*. That would be the case only where there was "no contractual basis" for a finding that the parties had agreed to class arbitrability. The arbitrator's analysis, using Washington contract law, determined that there was a contractual basis for such a finding; not even a "grave error" in that contractual analysis would entitle NCR to vacatur of that decision.

The Court finds that the precepts of *Stolt-Nielsen* and *Oxford Health* have not been disregarded in the Construction Award.

> 2. *Did the arbitrator err in relying on the* Haro *stipulation to find that NCR had agreed to class arbitrability?*

---

[2] This Court is aware that there is a circuit split on this issue, with the Sixth and Tenth Circuits requiring an express agreement to authorize class arbitration prior to resorting to contract interpretation. *See AlixPartners, LLP v. Brewington,* 836 F.3d 543, 553 (6th Cir. 2016) and *Pollard v. ETS PC, Inc.,* 186 F.Supp.3d 1166, 1179 (D.Colo. 2016). No Ninth Circuit precedent on the issue has been cited, and the Court finds the contrary authority cited *supra* to be the better-reasoned and more persuasive. *Stolt-Nielsen* permits a party to be compelled under the FAA to submit to class arbitration if there is "a contractual basis for concluding that the party *agreed* to do so" (559 U.S. at 684; emphasis in original). An arbitrator must be permitted to employ rules of contract interpretation in order to determine if there is "a contractual basis for concluding that the party agreed to do so."

On January 8, 2016, the parties were notified by the arbitrator that he had discovered a stipulation entered into by NCR in an earlier matter (*Haro v. NCR Corp.*, AAA 11-160-1962-05 (Mar. 6, 2006)) wherein NCR had stipulated "the arbitration agreement (apparently the same one as in this case) allowed for class actions." The arbitrator requested counsel to discuss the stipulation in their briefing (Dkt. No. 43-5 at 2) and they did so. (Dkt. No. 58, Def Opening Brief at 13.)

In the Construction Award, the arbitrator ruled that the *Haro* stipulation constituted a "judicial admission of NCR's intent that the language [of the arbitration agreement] permits class action arbitration." (Construction Award at 10.) The arbitrator assigned further significance to the facts that the language of the *Haro* agreement was identical to the Agreement presently before the arbitrator, that the stipulation was "public and was never limited as to applying to only the *Haro* case," and that "NCR never disavowed that Stipulation." (*Id.*)

Plaintiff NCR attacks this finding, both for its characterization of the *Haro* stipulation as a "judicial admission" and for the use of an extra-contractual document to interpret the Agreement executed by the parties. While the Court agrees with Plaintiff NCR that the *Haro* stipulation does not constitute a "judicial admission" (admissions must concern facts and the stipulation clearly concerns the legal impact of the document; *see Lam Res. Corp. v. Schunk Semiconductor*, 65 F.Supp.3d 863, 871 (N.D.Cal. 2014)), the Court disagrees that the arbitrator erred in considering the stipulation as evidence of Plaintiff NCR's intent.

The arbitrator cited to the Supreme Court of Washington in support of his methodology in interpreting the contract language:

> "To interpret the meaning of a contract's terms, Washington Courts employ the context rule. * * * The context rule requires that we determine the intent of the parties by viewing the contract as a whole, which includes the subject matter and intent of the contract, *examination of the circumstances surrounding its formation, subsequent acts and conduct*

*of the parties,* the reasonableness of the respective interpretations advanced by the parties, and statements made by the parties during preliminary negotiations, trade usage, and/or course of dealing."

Construction Award at 9, citing *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 351 (2004)(citation omitted)(emphasis supplied by arbitrator). The arbitrator then went on to remark that he found "great significance in NCR's *conduct* in entering into the Stipulation in the *Haro* case." (*Id.* at 10; emphasis in original.)

The Court is struck (as was the arbitrator) by the fact that the document which Plaintiff NCR agreed 10 years ago "permits the arbitration to proceed on behalf of a class" (*Id.* at 6) is the same document which was executed by Defendant Goh in this action. As the arbitrator pointed out in his summary of the *Stolt-Nielsen* holding: "Arbitration is a matter of consent and the consent by a party to arbitration class actions must be gleaned *from the language of the agreement to arbitrate.*" (*Id.* at 5; emphasis supplied.) Plaintiff NCR has already agreed that the language of the document which it drafted allows for class arbitrability.

Furthermore, the state law rules of contract interpretation favor the use of *Haro* stipulation. In support of the arbitrator's decision, Defendant Goh cites a Washington appellate decision which allows the decision maker, "'while viewing the contract as a whole, to consider extrinsic evidence such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.'" *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn.App. 263, 274 (Div. 1, 2012)(citation omitted). In light of the fact that the document used in *Haro* is identical to the Agreement executed between Plaintiff NCR and Defendant Goh, the Court finds that the stipulation in *Haro* is evidence of "the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations."

1   Plaintiff NCR complains that intervening changes in the law (changes exemplified by *Stolt-Nielsen* and *Oxford Health*) have rendered its earlier stipulation ineffective.  But that argument is a two-edged sword: In light of the intervening court decisions, Plaintiff NCR could have amended the document at any time to reflect that its position regarding class arbitrability had changed.  It did not do so.  The arbitrator did not err in assigning the weight to that stipulation which he did, and in citing it as evidence of Plaintiff NCR's intent in entering into the Agreement with Defendant Goh.[3]

**CONCLUSION**

The facts are not in dispute and the Court finds as a matter of law that Defendant Goh is entitled to summary judgment confirming the decision of the arbitrator.  The decision was issued in conformity with the requirements which the Supreme Court announced in *Stolt-Nielsen* and *Oxford Health*.  The arbitrator unquestionably construed the Agreement and the result is thus entitled to be upheld.  Plaintiff NCR's motion for summary judgment will be DENIED; Defendant Goh's motion for summary judgment will be GRANTED.  The arbitrator's ruling is hereby CONFIRMED.

---

[3] The Court further finds that, even if the arbitrator's use of the *Haro* stipulation was erroneous, it was not an error which affects the ultimate result.
   First, the error could simply be viewed as an error in the construction of the contract, in which case the Court is bound by the Supreme Court precedent discussed *supra* to find that "an arbitrator's error – even his grave error – is not enough.  So long as the arbitrator was 'arguably construing' the contract… a court may not correct his mistakes under §10(a)(4)." *Oxford Health,* 133 S.Ct. at 2070 (citation omitted).
   Alternatively, the Court looks to the other portions of the arbitrator's analysis – i.e., his analysis of the language of the contract itself (*see* "Analysis of Relevant Arbitration Clause Language," Construction Award at 8-9) – and finds that any possible error in utilizing the *Haro* stipulation does not impact his separate analysis of the contract language.  The vast majority of that analysis is conducted independently of the *Haro* stipulation, is strictly concerned with the arbitrator's interpretation of the language of the contract, and is entitled to the deference (dictated by *Oxford Health*) due to any arbitrator who has "arguably constru[ed] the contract."
   Either way, even if the arbitrator erred in utilizing the *Haro* stipulation as evidence of NCR's intent, it does not change the final outcome of this Court's examination of the facts and the law.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 30, 2017.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge